UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA            :

            - v -                    :        **08 Cr. 557 (SAS)**
**FALIKOU KONE,**                   :

                Defendant.          :

----------------------------------X


## MEMORANDUM OF LAW AND FACT IN SUPPORT
## OF MOTION TO SUPPRESS PHYSICAL EVIDENCE


                    LEONARD F. JOY, ESQ.
                    Federal Defenders of New York, Inc.
                    Attorney for Defendant
                        **Falikou Kone**
                    52 Duane Street - 10th Floor
                    New York, New York 10007
                    Tel.: (212) 417-8718


**MARK B. GOMBINER, ESQ.**

  Of Counsel


TO:  **MICHAEL J. GARCIA, ESQ.**
     United States Attorney
     Southern District of New York
     One. St. Andrew's Plaza
     New York, New York 10007
     Attn: **EDWARD KIM, ESQ.**
           Assistant United States Attorney

## INTRODUCTION

In August of 2007, Falikou Kone was serving a federal term of supervised release but was not subject to any special search conditions. Based on nothing more than a vague, uncorroborated, triple hearsay tip from two prisoner-informants whose credibility had not been verified in any way, the Probation Office secured an Order from the Hon. George B. Daniels permitting them to search the residence and vehicles of Falikou Kone. The order signed by Judge Daniels was not issued pursuant to any authority other than the All Writs Act and did not contain any finding that there was probable cause or reasonable suspicion for the proposed search.

The warrantless search of Mr. Kone's apartment and person uncovered evidence related to identity fraud and a check-cashing scheme. In Mr. Kone's wallet, the searching agents also found a driver's license in the name of Amadou Conte and the access code to a storage facility in the Bronx. An employee at the storage facility confirmed that Mr. Kone had accessed the locker Without any other evidence to suggest that the storage locker contained evidence of a crime, the Probation Office secured a second order from the Hon. Kimba Wood permitting them to search the storage locker. This search turned up substantial additional contraband.

The evidence seized in the two searches must be suppressed. The Fourth Amendment and the laws governing searches of persons on federal supervised release do not permit warrantless searches upon less than probable cause where the individual on supervised release is not subject to any special search conditions. The evidence must also be suppressed because the Probation Office did not even have the reasonable suspicion required for supervised release searches where there is a special condition authorizing such warrantless intrusions. Finally, the

jerry-rigged Orders obtained by the Probation Office cannot justify the searches. The All Writs

Act cannot be used as a mechanism for avoiding the comprehensive constitutional and statutory

standards that govern the issuance of search warrants and the permissible scope of warrantless

searches for individuals serving a term of supervised release.


## STATEMENT OF FACTS

### 1. Background

On February 24, 2004, Falikou Kone pled guilty in the Southern District of New York

(Baer, J.) to a four count information charging violations of the narcotics law and a conspiracy to

commit credit card fraud. On July 23, 2004, Judge Baer sentenced Mr. Kone to four concurrent

terms of 18 months imprisonment to be followed by five years of supervised release.

Mr. Kone's terms of supervised release were governed by the Standard Conditions of

Supervision. Standard Condition number 10 provides that "the defendant shall permit a

probation officer to visit him at his home or elsewhere and shall permit confiscation of any

contraband observed in plain view of the probation officer." Judge Baer did not impose any

special search conditions.

Mr. Kone began serving his term of supervised release in January of 2005. He lived in an

apartment in the Bronx with his wife and two young daughters.

### 2. A Tip from Prisoner-Informants and the Probation Office's Request to Search Mr. Kone's Home

On August 3, 2007, United States Probation Officer Claudell Brehon filed a sworn

Affidavit with Judge George B. Daniels of the Southern District of New York. Exhibit A.

Officer Brehon requested permission to search Mr. Kone's residence and two automobiles

alleged to be owned or operated by Mr. Kone for evidence relating to the suspected possession

and manufacture of fraudulent checks.

In support of this request, Officer Brehon averred that unnamed individuals in the United

States Probation Office had "received credible information from Special Agent Ron Smally (sic)

of the United States Secret Service, and a cooperating individual working with the United States

Secret Service, with personal knowledge of the illegal activity of Falikou Kone, suspected to be

involved in illegal activity, specifically the possession and manufacturing of fraudulent checks,

located at his residence, 367 East 158th Street, Apartment #2, Bronx, N.Y. 10451, a rental

property."

Officer Brehon claimed to have "specifically" learned that "the Secret Service and the

F.B.I. had recently arrested two individuals and that those individuals had "provided statements

implicating Falikou Kone, in a check cashing scheme involving fraudulently altered checks. In

addition, the cooperating individuals indicated that Falikou has equipment in his residence to

remove existing data on the check using an acid wash, and computer equipment to enter false

data on the checks."

Officer Brehon offered no reasons for crediting the informants' vague allegations. She

did not assert that the informant(s) had previously supplied reliable information or had otherwise

been determined to be reliable. Indeed, other than the fact that the informants had been arrested,

she did not include any facts about their background or the circumstances under which they

accused Mr. Kone. Similarly, she did not set forth any information as to the claimed source of

the informant's knowledge–e.g, whether the informants claimed to have ever been in Mr. Kone's

residence; participated in criminal activity with Mr. Kone; and/or observed Mr. Kone committing any crime. Nor, did Officer Brehon assert that law enforcement officers had corroborated any of the informants' allegations about Mr. Kone and/or that the informants had supplied any predictive information which could be corroborated.

Officer Brehon went on to note that the same unnamed cooperating individuals had "personally observed" Mr. Kone in a "Black Audi with Pennsylvania registration, and a Blue Cayenne Porsche, registration, unknown, during the course of the conspiracy to cash/deposit the fraudulent checks" and that Mr. Kone had not reported ownership, or operation, of either of these vehicles to his U.S. Probation Officer. Other than temporal proximity, Officer Brehon did not offer any further explanation as to what role (if any) the informants claimed the vehicles served in the alleged "check-cashing conspiracy." Neither did she supply any facts or theories as to why evidence relating to the purported "check-cashing conspiracy" could be expected to be found in the vehicles.

Finally, Officer Brehon did not allege that the facts set forth in her affidavit gave rise to probable cause (or any other quantum of suspicion) for the requested search of Mr. Kone's home and cars.

### 3. "Order" Authorizing Search of Mr. Kone's Apartment

On August 3, 2007, based solely on Officer Brehon's Affidavit, Judge Daniels issued an "Order" authorizing the Probation Office to conduct a search on August 10, 2007 of Mr. Kone's home; the vehicles identified in Officer Brehon's affidavit; and any other cars under Mr. Kone's "control and care." Exhibit B. The order identified the purpose of the search as the "seizure of all contraband associated with the illegal manufacture, and or, possession of fraudulent checks,

and or possession of illegal drugs or weapons." The order did not, however, make any finding

that there was probable cause (or any other quantum of suspicion) for the search.

Judge Daniels' order stated that the permission to search was granted pursuant to Title

28, United States Code, Section 1651–the "All Writs Act." The order did not cite any other

statute, regulation, or rule as giving the Court authority to permit the search.

## 4. The Warrantless Search of Mr. Kone's Person and Apartment

In the early morning of August 10, 2007, a large number of probation officers and Secret

Service agents went to Mr. Kone's apartment. When Mr. Kone answered the door, the officers

(falsely) informed Mr. Kone that they had a search warrant for his apartment.

Without either seeking or obtaining Mr. Kone's consent, the agents and officers

thoroughly searched Mr. Kone and his apartment. The agents did not find the "equipment" or

"acid wash" that the informants had spoken about. However, according to discovery received by

counsel, the agents seized a number of items including a computer and printer, cash and money

orders, H & R Block Mastercards, six United States Treasury Checks, and a folder containing

"papers with handwritten names, social security numbers, photocopies of Social Security cards,

W2 forms, and personal identifiable information."

Found in the wallet of Mr. Kone's pants was an Ohio driver's license in the name of

Amadou Conte and an access code for the Deluxe Storage Facility in the Bronx. A search of a

Blue Porsche Cayenne turned up a receipt for the payment of locker #1215 at the Deluxe Storage

Facility in the name of Amadou Conte.

After the agents finished searching, Mr. Kone was handcuffed and taken into custody.

Meanwhile, Probation Officer Ed Johnson went to Deluxe Storage Facility and exhibited a

picture of Mr. Kone to an employee of the facility. The employee identified Mr. Kone as "being the individual regularly accessing the same storage unit." Exhibit C.

**5. Request to Search Mr. Kone's Storage Locker**

Following the search of Mr. Kone's apartment and his arrest for violating the terms of his supervised release, United States Supervising Probation Officer Tim Murphy immediately presented a second affidavit to Chief Judge Kimba Wood. Exhibit C. Officer Murphy's Affidavit sought permission to search the storage locker at 255 Exterior Street, but did not say what he was hoping to find.

In his affidavit, Officer Murphy advised Judge Wood that the search of Mr. Kone's residence "revealed [he] had in his possession of (sic) evidence of identity theft in the form of numerous names with social security numbers and dates of birth." He further stated that agents had found identification in the name of Amadou Conte in Mr. Kone's wallet together with the name of a storage facility and that a receipt for a locker at the same storage facility was discovered in a car operated by Mr. Kone. Officer Murphy further related that another probation officer had shown a picture of Mr. Kone to an employee of the storage facility and the employee had identified Mr. Kone as "being the individual regularly accessing the same storage unit."

On this basis, Officer Murphy sought permission to search the storage locker, although he did not specify what evidence he was looking for. The sole rationale for the general search request was that the "U.S. Probation Office has revealed and received credible information that Falikou Kone is involved with illegal activity, specifically fraud related to identity theft, illegal credit card activity and illegal check cashing." Officer Murphy did not set forth any facts, theories, or explanations as to why he believed that evidence of identity theft, illegal credit card

activity and/or illegal check cashing would be found in the storage locker. Officer Murphy also did not advise Judge Wood that Mr. Kone was already in custody. Finally, as with Officer Brehon's affidavit, Officer Murphy failed to make any allegation that the facts set forth in his affidavit constituted probable cause (or any other quantum of suspicion) to believe that the requested search would disclose contraband.

## 6. Order Authorizing Search of Storage Locker

Judge Wood issued an "Order" similar to that of Judge Daniels, approving the requested search of the storage locker. Exhibit D. The only authority cited for her search order was the Title 28, U.S.C. §1651. And, as with Judge Daniels' order, there was no finding that the facts set forth in Officer Murphy's Affidavit gave rise to probable cause that the items sought would be found in the specified location. Although Officer Murphy had not identified what he was looking for, Judge Wood's order stated that "the purpose of this search is the seizure of all contraband associated with fraud relating to identity theft, illegal credit card activity and illegal check cashing."

Pursuant to Judge Wood's order, law enforcement agents and probation officers searched Mr. Kone's locker on August 10th, 2007. The agents seized a large volume of suspected contraband, including numerous bank records, credit and debit cards, treasury and bank checks, identification documents, tax returns, altered passports and computer equipment and printers.

## ARGUMENT

**THE EVIDENCE SEIZED FROM MR. KONE'S HOME, PERSON, AND STORAGE LOCKER MUST BE SUPPRESSED BECAUSE IT WAS SEIZED WITHOUT A WARRANT; WITHOUT EITHER PROBABLE CAUSE OR REASONABLE SUSPICION**

**TO SUPPORT THE SEARCH; AND PURSUANT TO INVALID ORDERS THAT WERE ISSUED WITHOUT LEGAL AUTHORITY AND IN CONTRAVENTION OF THE FOURTH AMENDMENT AND THE STATUTES GOVERNING THE SEARCHES OF PERSONS ON SUPERVISED RELEASE**

**I. THE WARRANTLESS SEARCH OF MR. KONE'S HOME, PERSON, AND STORAGE LOCKER VIOLATED THE FOURTH AMENDMENT BECAUSE THE SEARCH WAS NOT AUTHORIZED BY ANY STATUTE, RULE, REGULATION, OR CONDITION GOVERNING THE TERMS OF MR. KONE'S SUPERVISED RELEASE**

The evidence seized from Mr. Kone's home, person, and locker must be suppressed because it was obtained without a valid warrant. Absent exceptions that do not apply here, the Fourth Amendment does not permit probation officers to conduct a warrantless search of an individual on probation, parole, or supervised release when there is no law, condition, or regulation permitting such a warrantless search and when the parolee has not been notified that he is subject to a warrantless search.

The Fourth Amendment prohibits warrantless searches of a person's home, person, and property. "Because the right of a man to retreat into his home and there be free from governmental intrusion stands at the very core of the Fourth Amendment, our cases have firmly established the basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Groh v. Ramirez, 124 S.Ct. 1284, 1291 (2004); Payton v. New York, 445 U.S. 573, 586 (1980) (search of home may usually only be undertaken pursuant to a warrant supported by probable cause).

Persons on probation, parole or supervised release, like anyone else, are protected by the Fourth Amendment's requirement that searches and other intrusions upon their privacy be "reasonable." Griffin v. Wisconsin, 483 U.S. 868, 873 (1987). Because the Fourth Amendment's

touchstone is "reasonableness," the reasonableness of a parole search is "determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other hand, the degree to which it is needed for the promotion of legitimate governmental interests." United States v. Knights, 534 U.S. 112, 118-119 (2001). The warrantless search of Mr. Kone's home was unreasonable because it was not authorized by law, rule or regulation and was expressly contrary to the explicit terms governing Mr. Kone's supervised release.

In a series of cases, the Supreme Court has determined that probationers and parolees have a diminished expectation of privacy and that, when permitted by statute or regulation, they may be subject to searches based only on reasonable suspicion or even no suspicion at all. See Griffin v. Wisconsin, 483 U.S. 868 (1987) (warrantless search of probationer's home did not violate Fourth Amendment where search was conducted pursuant to state regulation authorizing such search upon "reasonable grounds;" "special needs" of probation system made warrant requirement impracticable and justified replacement of probable cause standard); United States v. Knights, 534 U.S. 112 (2001) (warrantless search of probationer's apartment, supported by reasonable suspicion and authorized by a condition of his probation, was reasonable within the meaning of the Fourth Amendment); Samson v. California, 126 S.Ct. 2193 (2006) (suspicionless search of California parolee, conducted pursuant to California law requiring all parolees to agree to be subject to search or seizure at any time, did not violate the Fourth Amendment).

The Second Circuit has also upheld warrantless searches of parolees and persons on supervised release, but has also limited its holdings to instances where either a law or a condition of release permitted such searches. See United States v. Chirino, 483 F.3d 141 (2d Cir. 2007) (warrantless search of probationer's bedroom did not violate Fourth Amendment where

-10-

defendant's terms of probation required him to permit probation officers to search his residence);

United States v. Newton, 369 F.3d 659 (2d Cir. 2004) (warrantless search of parolee's residence

was reasonable under the Fourth Amendment where New York state parole regulations permitted

warrantless searches and where parolee consented to such conditions); United States v. Reyes, 283

F.3d 446 (2d Cir. 2002) (warrantless home visit to defendant serving term of supervised release

with condition that he permit home visits made it reasonable for probation officers to walk on his

driveway and observe contraband in plain view).

   Two core principles emerge from the above line of cases. First, a state's rules governing

the terms of parole may diminish or infringe constitutionally protected liberties and privacy rights

as long as the rules are reasonably related to the purposes of parole. But, just as importantly, the

privacy rights of persons on supervision may be curtailed only to the extent permitted by some

law, rule, regulation or condition. United States v. Newton, supra at 665 (although probationers

and parolees are subject to a degree of impingement upon their privacy that would not be

constitutional if applied to the public at large, "such greater intrusions occur pursuant to a rule or

regulation 'that itself satisfies the Fourth Amendment's reasonableness requirement'" (citing

Griffin v. Wisconsin, 483 U.S. 868, 873 (1987)). Absent such authority, the mere status of being

on parole or supervised release cannot justify a search that would otherwise violate the Fourth

Amendment. Cf. Colonnade Catering Corp. v. United States, 397 U.S. 72, 77 (1970) ("Where

Congress has authorized inspection but made no rules governing the procedures that inspectors

must follow, the Fourth Amendment and its various restrictive rules apply").

   No law, rule, condition or regulation permitted the warrantless search of Mr. Kone's home

and storage locker. Unlike California law, Federal law requires a "level of individualized

suspicion" for warrantless searches of individuals on supervised release. Samson at 2201.
Warrantless searches of persons on supervised release are permitted *only* where a special
condition of supervised release authorizing such searches has been imposed *and* where there is
reasonable suspicion for such a search. See Title 18, U.S.C. §3583(d)(3) ("The court may order,
as an explicit condition of supervised release for a person who is a felon and required to register
under the Sex Offender Registration and Notification Act, that the person submit his person, and
property, house, residence, vehicle, papers, computer, other electronic communications or data
storage devices or media, and effects to search at any time, with or without a warrant, by any law
enforcement or probation officer **with reasonable suspicion** concerning a violation of a condition
of supervised release or unlawful conduct by that person...." Similarly, the rules of the United
States Parole Commission provide that a "a search of the person, residence, office or vehicle of a
releasee may be conducted by a Supervision Officer **only** upon consent or pursuant to a **special
condition of release**, as provided by the guidelines." Even when there is a such a special
condition of release authorizing warrantless searches, the Parole regulations state that a search
may not be conducted unless the searching officer has a "**reasonable belief** that contraband or
evidence of a violation of the conditions of release may be found," emphases added. See U.S.
Department of Justice, United States parole Commission's Rules and Procedures Manual 195
(2003), available at http://www.usdoj.gov/uspc/rules-procedurs/uspcmanual8-15-03final.pdf.

     Mr. Kone was not subject to any special search conditions as a condition of his supervised
release and there is no federal law that permits warrantless searches in the absence of such a
condition. Accordingly, the search of his residence, person, and storage locker, without a warrant
issued upon probable cause, violated the Fourth Amendment.

The warrantless searches conducted by the probation office and the Secret Service are also unreasonable because Mr. Kone was neither informed that he could be subject to such an invasion of his privacy nor agreed to any such intrusion. In upholding warrantless parole searches, the courts have repeatedly stressed the importance of prior notification to the parolee regarding the regulations that diminish his expectation of privacy. See Samson, supra at 852, ("Additionally, as we found "salient" in Knights with respect to the probation search condition, the parole search condition under California law–requiring inmates who opt for parole to submit to suspicionless searches by a parole officer...was 'clearly expressed' to petitioner"); United States v. Reyes, 283 F.3d 446, 461 (2d Cir. 2002) (because parolee was "fully aware" that his conditions of supervision included home visits at any time, he had a "severely diminished expectation of privacy with respect to any visit by a probation officer); United States v. Massey, 461 F.3d 177, 180 (2d Cir. 2006, Miner, J., concurring) (search of parolee's bedroom was reasonable because signed condition of release that he was subject to such search without warrant gave him "specific notice" that his privacy interests were diminished).

Conversely, where the parolee has not agreed to and/or been notified of a reduced expectation of privacy, the traditional requirements of the Fourth Amendment apply. See United States v. Carnes, 309 F.3d 950, 963 (warrant and probable cause required for search of parolee's residence where parole agreement signed upon release "never showed that he was willing to forego his privacy rights by expressly allowing the police greater authority to search him and his residence"); Cf. United States v. Goldenberg, 2006 WL 266564 (S.D.N.Y. 2006) (where probation officer received information that individual on federal supervised release, subject only to standard conditions of supervised release, was involved in drug trafficking, officer sought and

received search warrant based on probable cause before conducting search of releasee's residence and automobile).

## II. THE SEIZURE OF EVIDENCE FROM MR. KONE'S HOME, PERSON, AND STORAGE LOCKER VIOLATED THE FOURTH AMENDMENT BECAUSE IT WAS NOT SUPPORTED BY EITHER PROBABLE CAUSE OR REASONABLE SUSPICION

Even if the case law could somehow be construed as permitting a warrantless search of Mr. Kone's person, home, and storage based only on "reasonable suspicion," the evidence seized would still have to be suppressed. The scant, unreliable and uncorroborated triple hearsay accusations from unnamed informants that prompted the search of Mr. Kone's home and person does not meet the standards for "reasonable suspicion." And, the absence of *any* facts or even articulated theories to support the search of the storage locker falls even farther afield.

Reasonable suspicion for a search requires that law enforcement officers have "articulable reasons" and a "particularized and objective basis for suspecting the particular person...of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). Like probable cause, reasonable suspicion is determined based on the totality of the circumstances, although the likelihood of criminal activity does not have to rise to the level of probable cause. United States v. Arvizu, 534 U.S. 266, 273-274 (2002).

Reasonable suspicion may be based upon information from a confidential informant only if the tip bears "sufficient indicia of reliability" Adams v. Williams, 407 U.S. 143, 147 (1972). As in the probable cause context, courts must assess an informant's under the "totality of the circumstances" test. United States v. Elmore, 482 F.3d 172, 179 (2d Cir. 2007), citing Illinois v. Gates, 462 U.S. 213 (1983). Under Gates, the basic test for evaluating the credibility of an

informant remains his knowledge and veracity–how he knows and why we should believe him. Elmore, 482 F.3d at 180.

The search of Mr. Kone's home and person was premised exclusively on the accusations of two informants as relayed by Secret Service Agent Ron Smalley to an unnamed someone in the Probation Office to Officer Brehon. By any measure, this triple hearsay tip fails to supply reasonable suspicion for a warrantless search.

First, there are no facts which would have led one to believe that the informants were credible. There was no claim that the informants had ever actually previously supplied credible information or even that anyone in law enforcement considered them to be credible. Indeed, other than the fact that the informants were suspected criminals in custody with a strong motive to lie-- as opposed to citizen-informants--there was not a shred of information offered with which to evaluate their veracity.

Secondly, the informants' extremely vague tip was unaccompanied by any statement regarding the basis for their purported knowledge of Mr. Kone's criminality. Although Officer Brehon's affidavit states that one of the informants had "personal knowledge" of Mr. Kone's illegal activities, it does not say what that knowledge was and/or how and when it was acquired. To the contrary, her affidavit is devoid of any details regarding how the informants supposedly came to know that Mr. Kone was engaged in the possession and manufacturing of fraudulent checks or that he had "equipment" in his home to facilitate the task. To the contrary, there was no assertion that the informants had ever been in his home or ever observed him in the possession of fraudulent checks. They did not provide any time frame for their accusations.

Finally, the informants' tip was entirely uncorroborated. The informants did not supply

-15-

any predictive information and neither the probation office nor the Secret Service corroborated any aspect of anything they did say.

In short, this is a case where the probation office invaded Mr. Kone's home based on nothing more than the unvarnished, uncorroborated triple hearsay accusations of two suspected criminals with nothing else to lend credence to their claims. That does not amount to reasonable suspicion for a parole search. See United States v. Muhammad, 463 F.3d 115, 122 (2d Cir. 2006) (absent any information about anonymous caller's[1] reliability or provision of information predictive of activity, tip that black man in white clothes riding a bicycle had a gun in his hand would not constitute reasonable suspicion for stop when police officer did not see gun); Fox v. State, 527 S.E.2d 847 (Ga. 2000) (no reasonable suspicion for parole search where information that parolee was selling marijuana came from a tipster who was a prisoner of unknown reliability and who did not provide any information as to why he believed parolee was selling marijuana or any details that the police could have corroborated by observation); Cf. United States v. Tucker, 309 F.3d 1193, 1201 (10th Cir. 2002) (parole search supported by reasonable suspicion where tip came from citizen-informant; adequately explained the informant's basis of knowledge and was "quite detailed").

The search of Mr. Kone's storage locker lacks any basis whatsoever. Officer Murphy sought to search the locker based on nothing more than the (1) the discovery of contraband in Mr. Kone's home. (2) the concurrent seizure from Mr. Kone's wallet of an identification card in the name of Amadou Conte, and (3) documents indicating that a storage locker had been rented in

---

[1]The informants in this case, although unnamed, were not truly anonymous. However, the fact that they were known only as criminals under arrest does not make them more credible than an anonymous citizen-informant.

-16-

Conte's name together with confirmation that Mr. Kone had been observed using the storage locker. At very most, these facts provide only sheer speculation for searching the storage locker. Notably, Officer Murphy's affidavit does not even try to explain why he wanted to look in the storage locker, nor does it even say what he wanted to look for. At very most, Officer Murphy had a hunch that he might find something–but, an "inchoate and unparticularized suspicion or hunch" does not amount to reasonable suspicion. Alabama v. White, 496 U.S. 325, 329-30 (2000).

**III. THE ORDERS PURPORTING TO PERMIT THE SEARCH OF MR. KONE'S HOME AND STORAGE LOCKER CANNOT JUSTIFY THE WARRANTLESS SEARCHES BECAUSE THEY WERE ISSUED WITHOUT STATUTORY AUTHORITY AND IN VIOLATION OF THE FOURTH AMENDMENT; RULE 41 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE; AND TITLE 18, U.S.C. §3583.**

Finally, the "Orders" purporting to authorize the searches of Mr. Kone's home and locker are not a substitute for search warrants issued upon a finding of probable cause and cannot justify the intrusions. Rather, the ad hoc orders were issued without any valid statutory basis and in flagrant violation of the Fourth Amendment; Rule 41 of the Federal Rules of Criminal Procedure and Title 18, U.S.C. § 3583.

A search warrant is valid only when issued upon a finding of probable cause by a neutral and detached magistrate. U.S. Const. amend. IV; Illinois v. Gates, 462 U.S. 212, 238 (1983) (a magistrate presented with a search warrant must make a "practical, common-sense *decision* whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Rule 41(d) of the Federal

Rules of Criminal Procedure codifies these basis principles by requiring that a "magistrate judge or a judge of the state court of record must issue the warrant if there is probable cause to search for and seize a person or property under Rule 41(c)."

The orders signed by Judge Daniels and Judge Wood and the affidavits upon which they issued simply do not satisfy the basic requirement of the Fourth Amendment. Neither the orders nor the affidavits upon which they are based contain any finding or even allegation that there was probable cause, or even a lesser quantum of suspicion, to justify the searches. Whatever one wants to call such orders, they are not search warrants within the meaning of the Fourth Amendment. See State v. Allen, 69 P.3d 232 (Nev. 2003) (underpinning search warrant law is the requirement that search warrants issue upon a finding of probable cause; purported warrant which failed to contain any such statement of probable cause rendered warrant invalid).

The failure to make any finding of probable cause is exacerbated by the fact that the orders were issued without any apparent statutory or rule authority and exceed the jurisdiction of the court. The orders recite that they are made pursuant to Title 18, U.S.C. § 1651. But Section 1651–the "All Writs Act" merely provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The All Writs Act is a residual source of authority for the issuance of writs which are not covered by statute, but where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Pennsylvania Bureau of Corrections v. U.S. Marshals Service, Pa., 474 U.S. 34 (1985).

Here, the Fourth Amendment, Rule 41 and Title 18, U.S.C. § 3583 clearly and comprehensively address the issuance of search warrants and the special requirements for searches

-18-

of persons on supervised release. The Fourth Amendment and Rule 41 expressly require probable cause before a search warrant can issue. Title 18, U.S.C. §3583 makes equally clear that warrantless searches of persons on supervised release are authorized only when a special condition permits such searches and when there is reasonable suspicion for the search. The All Writs Act surely cannot serve as a device to get around the requirements of the Fourth Amendment, Rule 41 and Section 3583. Cf. United States v. New York Telephone Company, 434 U.S. 159, 168-69 (1977) (district court had authority under All Writs Act to direct telephone company to assist installation of pen registers where the order was "predicated upon a proper finding of probable cause, and no claim was made that order was in any way inconsistent with the Fourth Amendment").

## CONCLUSION

For the foregoing reasons, the evidence seized from Falikou Kone's home, person, and storage locker on August 10, 2007 should be suppressed. In the alternative, the Court should conduct a hearing on Mr. Falikou's motion to suppress the evidence.

Respectfully submitted,

Mark B. Gombiner
Attorney for Falikou Kone

cc: A.U.S.A. Edward Kim

-19-



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## UNITED STATES OF AMERICA

### V.
### FALIKOU KONE

DOCKET NO: 03-CR-1209

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AFFIDAVIT

BEFORE ME, the undersigned authority, Hon. George B. Daniels, U.S. District Judge, (Part I,) Southern District of New York, on this __3__ day of _August_, 2007, personally appeared U.S. Probation Officer Claudell Brehon known to me to be a credible person and of lawful age, who being by me first duly sworn, on his oath, deposes and says:

In asmuch as the U.S. Probation Office has received credible information from Special Agent Ron Smally of the United States Secret Service, and a cooperating individual working with the United States Secret Service, with personal knowledge of the illegal activity of Falikou Kone, suspected to be involved in illegal activity, specifically, the possession and manufacturing of fraudulent checks, located at his residence, 367 East 158th Street, Apartment #2, Bronx, N.Y. 10451, a rental property.

Specifically, following the recent arrest of two individuals by the United States Secret Service and the Federal Bureau of Investigation, these two individuals provided statements implicating Falikou Kone, in a check cashing scheme involving fraudulently altered checks. In addition, the cooperating individuals indicated that Falikou has equipment in his residence to remove existing data on the checks using an acid wash, and computer equipment to enter false data on the checks.

The cooperating individuals have personally observed Falikou Kone in a Black Audi with Pennsylvania registration and a Blue Cayenne Porsche, registration, unknown, during the course of the conspiracy to cash/deposit the fraudulent checks. Falikou Kone has not reported ownership, or operation, of either of these vehicles to his U.S. Probation Officer.

It is therefore requested that Your Honor grant permission for U.S. Probation Officers to search said vehicles that are known to have been used by Falikou during the course of this illegal conduct, or any vehicle in his control and custody at the time of the execution of warrant, and the said residence located at 367 East 158th Street, Apt #2, Bronx, N.Y. 10451, a residence verified to be true by the U.S. Probation Officer for the Southern District of New York.

*Claudell Brehon*

**Claudell Brehon, United States Probation Officer**
**230 Broadway, New York, NY 10279**
******************************************************* ***********

Subscribed and sworn to before me, this __3RD,__ _____ [day of month  day of
2007.                                                        _August_

*George B. Daniel* _____ [signature]    AUG 0 3 2007

George B. Daniels    HON. GEORGE B. DANIELS
U.S. District Court Judge



03-CR-1209

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## UNITED STATES OF AMERICA

### V.

### FALIKOU KONE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ORDER TO SEARCH RESIDENCE

THIS CAUSE having come to be heard before me upon the motion of Claudell Brehon United States Probation Officer for an order directing THE UNITED STATES PROBATION DEPARTMENT to search the above stated defendant's legal residence at 367 EAST 158TH STREET, APT #2, BRONX, N.Y. 10451, the legal residence of FALIKOU KONE, and any and all automobiles under his care and control, including, but not limited to a black Audi with Pennsylvania registration, and a blue Cayenne Porsche.

Being fully advised in the premises of this case it is HEREBY ORDERED pursuant to Title 28, United States Code, Section 1651, that the UNITED STATES PROBATION DEPARTMENT is to search said residence and automobiles on Friday August 10, 2007.

The search is to be conducted between the hours of 7 a.m and 10:00 p.m. on said residence and automobiles. The search is to be strictly confined to the defendant residence and automobiles.

The purpose of this search is the seizure of all contraband associated with the illegal manufacture, and or, possession of fraudulent checks, and or possession of illegal drugs or weapons.

DATE: _____AUG 0 3 2007_____        _George B. Daniel_

UNITED STATES DISTRICT JUDGE
HON. GEORGE B. DANIELS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

EXECUTED

DATE: _____        TIME: _____



<u>UNITED STATES DISTRICT COURT</u>
SOUTHERN DISTRICT OF NEW YORK

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
**UNITED STATES OF AMERICA**

V.

**FALIKOU KONE**

DOCKET NO: 03-cr-1209

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>AFFIDAVIT</u>

BEFORE ME, the undersigned authority, Hon.  Kimba M. Wood Chief U.S. District Judge for the Southern District of New York, on this 10th  day of August, 2007, personally appeared Supervising U.S. Probation Officer Timothy Murphy known to me to be a credible person and of lawful age, who being by me first duly sworn, on his oath, deposes and says:

In as much as the U.S. Probation Office conducted a search at Falikou Kone's residence at 367 East 158th Street, Apartment #2, Bronx, New York, 10451, pursuant to a Search Order Issued by the Honorable George B. Daniels, U.S. District Judge on August 3, 2007, and executed on August 10, 2007, for the purpose of determining if Falikou Kone was involved in criminal activity related to the manufacture of fraudulent checks. The search revealed Falikou Kone had in his possession of evidence of identify theft in the form of numerous names with social security numbers and dates of birth. In addition. the search revealed Falikou Kone was utilizing the alias of Amadou Conte as evident by identification found in Falikou Kone's wallet. Also found in the wallet was the name of a storage facility. In a Porsche Cayenne operated by Falikou Kone, also subject of the previously issued search order, was a receipt from the same storage facility. Finally, Supervising U.S. Probation Officer Ed Johnson displayed a photo of Falikou Kone who was identified by an employee of the storage facility as being the individual regularly accessing the same storage unit.

Inasmuch as the U.S. Probation Office has revealed and received credible information that Falikou Kone  is involved with illegal activity, specifically, fraud related to identity theft, illegal credit card activity and illegal check cashing, it is therefore requested that Your Honor grant permission for U.S. Probation Officers to search said storage facility  that is rented in the name of  Amadou Conte  and  used primarily by, Falikou Kone at storage locker 1215 at Storage Deluxe 255 Exterior Street, Bronx, New York, 10451,  the address verified to be true by the U.S. Probation Officers for the Southern  District of New York.

_____
Timothy Murphy, Supervising United States Probation Officer
500 Pearl Street, New York, NY 10007
*****************************************************************************

Subscribed and sworn to before me, this ___10th___ [day of month] day of August
200**9**. *[signature]* —Kimba

(Kimba M. Wood [signature]
Kimba M. Wood, U.S. Chief District Court Judge

03-CR-1209

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## UNITED STATES OF AMERICA

### V.

### FALIKOU KONE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ORDER TO SEARCH STORAGE FACILITY

**THIS CAUSE** having come to be heard before me upon the motion of Timothy Murphy, Supervising  United States Probation Officer for an order directing THE UNITED STATES PROBATION DEPARTMENT to search the above stated defendant's storage facility  that is rented in the name of  Amadou Conte  and  used primarily by, Falikou Kone at storage locker 1215 at Storage Deluxe 255 Exterior Street, Bronx, New York, 10451,  the address verified to be true by the U.S. Probation Officers for the Southern District of New York.

Being fully advised in the premises of this case it is HEREBY ORDERED pursuant to Title 28, United States Code, Section 1651, that the UNITED STATES PROBATION DEPARTMENT is to search said location on or about August 10, 2007.

The search is to be conducted between the hours of 7 a.m and 10:00 p.m. on said location. The search is to be strictly confined to the aforementioned storage locker.

The purpose of this search is the seizure of all contraband associated with  fraud related to identity theft, illegal credit card activity and illegal check cashing.

DATE: _Aug. 10, 2007_ _____

**CHIEF UNITED STATES DISTRICT JUDGE**
**KIMBA M. WOOD**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**EXECUTED**

DATE: _____        TIME: _____